IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRI-ARC FINANCIAL SERVICES, INC. :
                                   :                CIVIL ACTION
                v.                 :
                                   :                NO. 16-2681
EVANSTON INSURANCE COMPANY,        :
ET AL.                             :

MEMORANDUM

SURRICK, J.                                        DECEMBER  8  , 2016

     Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint.  (ECF

No. 15.)  For the following reasons, the Motion will be treated as a Motion for Judgment on the

Pleadings and will be granted.

I.      BACKGROUND

     Plaintiff Tri-Arc Financial Services Inc. purchased a professional liability insurance

policy from Defendants Evanston Insurance Company and Markel Service, Inc.  (Compl. ¶ 6,

Notice of Removal Ex. A, ECF No. 1.)  Plaintiff brings this action based upon Defendants'

refusal to provide coverage or to defend Plaintiff in an underlying civil action.  Defendants

contend that they had no duty to provide coverage or to defend Plaintiff because the underlying

action fell under one of the insurance policy's exclusions.

     On April 26, 2016, Plaintiff filed the instant Complaint in the Court of Common Pleas of

Montgomery County, Pennsylvania.  Plaintiff's Complaint alleges four claims against

Defendants, all of which arise from Defendants' failure to provide coverage and to defend

Plaintiff in the underlying action.  Plaintiff asserts the following claims:  Plaintiff requests that

this Court enter a declaratory judgment, finding that Defendants have a duty to defend Plaintiff

under 42 Pa. Cons. Stat. § 7532 (Count I); Plaintiff alleges that Defendants breached their

contractual obligations, and requests that this Court require Defendants to provide the proper

defense in the underlying suit (Count II); Plaintiff seeks damages arising from Defendants'

breach of contract (Count III); and Plaintiff alleges that Defendants acted in bad faith when they

denied coverage to Plaintiff, pursuant to 42 Pa. Cons. Stat. § 8371 (Count IV).

On June 1, 2016, Defendants filed a Notice of Removal to this Court on the basis of

diversity jurisdiction.[1]  On June 8, 2016, Defendants filed an Answer to Plaintiff's Complaint.

(Defs.' Ans., ECF No. 6.)  On June 17, 2016, Defendants filed an Amended Answer.  (Defs.'

Am. Ans., ECF No. 10.)  On September 1, 2016, Defendants filed the instant Motion to Dismiss

and Memorandum.  (Defs.' Mot., ECF No. 15.)  On October 17, 2016, Plaintiff filed a Response

in Opposition to Defendants' Motion to Dismiss.  (Pl.'s Resp., ECF No. 17.)  On November 7,

2016, Defendants filed a reply brief in Support of Defendants' Motion to Dismiss.  (Defs.'

Reply, ECF No. 18.)  That same day, Defendants filed an Amended Reply Brief in Support of

Defendants' Motion to Dismiss.  (Defs.' Am. Reply, ECF No. 19.)

Plaintiff's Complaint alleges that on November 14, 2013 Plaintiff bought an insurance

policy from Defendant Evanston Insurance Company ("Evanston").  (Compl. ¶ 6.)  On

November 14, 2014, Plaintiff purchased another insurance policy from Evanston.  (*Id*. ¶¶ 7, 9.)[2]

Plaintiff's policies with Evanston provided professional liability insurance coverage for lawsuits

---

[1] Since this is a diversity case, Pennsylvania law will be applied to the substantive issues. *See Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) ("As a federal court sitting in diversity, we must apply the substantive law as decided by the state's highest court.").

[2] Plaintiff's first policy (Policy I) with Evanston covered the time period of November 14, 2013 to November 14, 2014.  (Compl. ¶ 7.)  Plaintiff's second policy (Policy II) covered the time period of November 14, 2014 to November 14, 2015.  (*Id*. ¶ 9.)  For the purposes of our analysis, these policies are identical, and we will hereinafter refer to them as "the policy" or "the policies."

brought against Plaintiff.  (Compl. ¶ 6.)  The policies had a "$1,000,000 per claim limit, a

$1,000,000 policy aggregate limit, and a $25,000 deductible applicable to each claim."  (*Id*. ¶ 7.)

On April 23, 2014, Vehicle Leasing II, LP d/b/a D&M Leasing and Vehicle Leasing, LP

d/b/a HERNCO ("Vehicle Leasing") filed a lawsuit against Wesco Insurance Company

("Wesco") and Amtrust Financial Services, Inc. ("Vehicle Leasing lawsuit").  (Vehicle Leasing

Compl., Pl.'s Resp. Ex. 4.)  The Vehicle Leasing lawsuit claimed that Wesco falsely issued an

insurance policy (the Residual Value Insurance policy) to Vehicle Leasing.  (Compl. ¶ 18.)  The

Vehicle Leasing lawsuit alleges that Vehicle Leasing "paid premiums yet received no actual

insurance coverage" from Wesco.  (*Id*.)  On September 20, 2015, Wesco filed an original third

party petition against Plaintiff requesting that Plaintiff be included as a third-party defendant and

assigned a percentage of liability.  (Wesco Original Pet., Pl.'s Resp. Ex. 5.)  On August 4, 2016,

Wesco filed an amended third party petition.  (Wesco Am. Pet., Pl.'s Resp. Ex. 6.)

Plaintiff subsequently requested that Defendants defend Plaintiff in the Vehicle Leasing

Lawsuit.  (Compl. ¶ 27.)  Defendants refused to grant Plaintiff's request, claiming that

Defendants did not have a duty to defend Plaintiff in the Vehicle Leasing lawsuit.  (*Id*. ¶ 28.)

Defendants stated that they did not have a duty to defend Plaintiff because the underlying

complaint demands a return of the premium payments, which is excluded under the policies.  (*Id*.

¶ 29.)

## II.    LEGAL STANDARD

If a defendant files a motion to dismiss after it has already filed an answer, as is the case

here, "the motion must be considered a Rule 12(c) motion."  *Turbe v. Gov't of Virgin Islands*,

938 F.2d 427, 428 (3d Cir. 1991); *see also Wyeth v. Ranbaxy Labs. Ltd.*, 448 F. Supp. 2d 607,

609 (D.N.J. 2006) ("A motion made after an answer is filed is a motion for judgment on the

pleadings pursuant to Rule 12(c).”); *DeBraun v. Meissner*, 958 F. Supp. 227, 229 (E.D. Pa. 1997) ("A party must file a 12(b)(6) motion prior to filing a responsive pleading.  Accordingly, because the defendants have answered the complaint, I must treat this only as a motion for judgment on the pleadings." (citations omitted)).  A Rule 12(c) motion allows for a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion is analyzed under the same standard as a Rule 12(b)(6) motion, except that for a 12(c) motion the Court reviews "the answer and written instruments attached to the pleadings."  *Brautigam v. Fraley*, 684 F. Supp. 589, 591 (M.D. Pa. 2010).

We may treat this as a Rule 12(c) motion and rule on it only if there are no issues of material fact remaining.  *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) ("Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved . . . ." (citation and quotations omitted)).  Since "[t]he interpretation of an insurance policy is a question of law . . . [c]ourts may . . . dispose of such cases on motions for judgment on the pleadings where the sole issue concerns the interpretation of the policy."  *Allstate Ins. Co. v. Key-Berthau*, No. 08-768, 2008 WL 5382924, at *5 (E.D. Pa. Dec. 19, 2008) (internal citation and quotation marks omitted); *see also Sciolla v. W. Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013) ("Interpreting an insurance policy 'is a question of law' for the Court to determine." (citations omitted)).  In this case, we are being asked to interpret the insurance policy and determine whether Defendants have a duty to defend Plaintiff under the terms of the policy.

## III.    DISCUSSION

Plaintiff argues that Defendants have a duty under the policy to defend Plaintiff in the Vehicle Leasing lawsuit.  Defendants argue that they do not have a duty to defend Plaintiff because the underlying claim seeks recovery of premiums, which is excluded under the policy. Plaintiff responds that the premium exclusion does not apply here because there was no underlying policy, and therefore there could be no premiums.  Plaintiff also claims that the exclusion does not apply because Defendants have already defended Plaintiff in a nearly identical lawsuit, thus conceding that they have an affirmative duty to defend.  Defendants argue that the claims were not identical, and that therefore they have conceded nothing.  For the following reasons, we conclude that the exclusion applies, and that Defendants have no duty to defend Plaintiff or to provide coverage in the Vehicle Leasing lawsuit.

Generally, the plaintiff bears the burden of proving that an underlying claim falls within a policy's grant of coverage.  *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996).  However, when an insurer "raises a defense based on a policy exclusion, the burden shifts" and the insurer must prove that the exclusion does in fact apply.  *Sciolla*, 987 F. Supp. 2d at 599; *see also Koppers*, 98 F.3d at 1446 ("By contrast, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense.").  Here, in their Sixteenth Affirmative Defense, Defendants disclaim coverage asserting that a claim to return premiums is specifically excluded from their general duty to defend.  (Defs.' Am. Answer 19.)  Defendants assert that Plaintiff does not have a viable claim because Vehicle Leasing's only damages are a claim for return of premiums.  (Defs.' Mot. 10.)

5

We must determine whether Defendants have met their burden of proving that the exclusion applies to the Vehicle Leasing lawsuit.  In order to determine whether Defendants were required to defend Plaintiff in the underlying complaint, we must (1) "determine the scope of coverage under the insurance policy itself" and (2) "ascertain whether the complaint against the insured states a claim that is potentially covered under the policy."  *Allstate Ins. Co. v. Drumhelle*, 185 F. App'x 152, 154 n.2 (3d Cir. 2006).  In discerning whether the complaint is potentially covered under the policy, a court must limit itself to "only those factual allegations made within the 'four corners' of the underlying complaint."  *Key-Berthau*, 2008 WL 5382924, at *5; *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 894 (Pa. 2006) ("[A]n insurer's duty to defend and indemnify was dependent on whether the third-party's complaint triggers coverage . . . ." (internal citation and quotations omitted)).

A.     **Scope of Coverage**

Initially, we must determine the scope of the coverage within the policy.  The policy provides that professional services are services "rendered in the conduct of the Insured's profession as an insurance agent . . . ."  (Insurance Policy 4, Pl.'s Resp. Ex. 1.)  A suit against Plaintiff must be defended if it involves any wrongful act, including "any negligent act, error or omission in Professional Services."  (*Id*.)  The policy provides an affirmative duty on Defendants to defend Plaintiff in the event that Plaintiff is subjected to a third party lawsuit.  The policy states that Defendants:

> shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period . . . by reason of:
> 1.  a Wrongful Act; or
> 2.  A Personal Injury;

6

in the performance of Professional Services rendered or that should have been rendered by the Insured . . . .

(*Id*. at 1.)

The policy states that Defendants must provide professional liability coverage to Plaintiff. However, it contains a number of exceptions.  (*Id*. at 4-5.)  These exceptions release Defendants from their duty to defend.  (*Id*. at 4.)  The policy sets forth several exclusions, which state that the policy "does not apply to any Claim" under the circumstances delineated within the policy. (*Id*.)  One of the exclusions is Exclusion F of the policy.  Exclusion F states that the duty to defend does not apply to any claim "based upon or arising out of . . . any Claim for loss monies received by the Insured . . . for . . . premiums . . . ."  (*Id*. at 5.)  While Defendants are generally required to defend Plaintiff for claims arising out of the professional services rendered, they are not required to defend claims against Plaintiff to recover premiums.

When interpreting the scope of an insurance policy, the Court must determine the parties' respective intentions, as manifested by the policy terms.  *Kvaerner*, 908 A.2d at 897.  If the policy terms are clear and unambiguous, the parties' intentions must be determined from the insurance policy itself.  *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 389 (Pa. 1986). "Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy."  *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 750 (Pa. 2002).  An insurance policy will be considered ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  *Hutchison*, 519 A.2d at 390.

Here, the policy excludes "any Claim" to recover premiums received by the Insured. Because Exclusion F states that it applies to *any claim* to recover premiums, and contains no qualifications, the language is clear and unambiguous.  The Ninth Circuit addressed this exact

exclusion in a case also involving Defendant Evanston Insurance.  In *Evanston Ins. Co. v. Fred A. Tucker & Co.*, 872 F.2d 278 (9th Cir. 1989), the court examined the same exclusionary language that we examine here in considering whether the exclusion applied to the underlying complaint.  The exclusion (also Exclusion F) stated that the policy did not apply to "any claim for loss monies received by the insured . . . or to any claim for . . . premiums . . . ." *Id.* at 279.  The Ninth Circuit held that "the policy excludes unambiguously *any* claim for premiums, regardless of how characterized." *Id*. at 279-80 (emphasis in original).  We agree with the Ninth Circuit.  The policy clearly does not apply to any type of claim that seeks recovery of premiums.

**B.     Applicability to Underlying Dispute**

        Next, we must determine whether the policy requires Defendants to defend Plaintiff in the underlying complaint, and specifically, whether Exclusion F applies here.  An insurer has a duty to defend the insured unless the insurer is able to prove that the factual allegations in the complaint could not fall within the scope of the policy. *21st Century N. Am. Ins. Co. v. Wolfington*, 892 F. Supp. 2d 692, 697 (E.D. Pa. 2012).  In examining whether Defendants have a duty to defend, we "must look only to the factual allegations made within the 'four corners' of the underlying complaint, regardless of the particular causes of action." *Id.* (citations omitted); *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225-26 (3d Cir. 2005) (stating that a court "must examine the complaint in the underlying action to determine whether it triggers coverage.").  Moreover, we must examine the terms of the underlying complaint in such a way that assumes coverage where there may be a possible claim. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016) ("[A]n insurer has a duty to defend if there is any possibility that its coverage has been triggered by allegations in the underlying complaint.").

Plaintiff argues that the exclusion should not apply to the Vehicle Leasing claim because the underlying claim is for the fraudulent sale of an insurance policy. (Pl.'s Resp. 10.) Plaintiff contends that the premium exclusion does not apply to the underlying complaint because no insurance policy existed, and consequently no premiums ever existed. (*Id.*) Defendants respond that "[i]t is not for Tri-Arc to label the damages sought in the underlying action . . . ." (Defs.' Resp. 3.) Defendants argue that the actual damages alleged within the underlying complaint are limited to the premium payments made to Plaintiff. (*Id.* at 4.)

The Ninth Circuit in *Evanston* addressed this exact issue. The plaintiff in *Evanston* argued that the defendant had a duty to defend him in an underlying lawsuit. 872 F.2d at 279. There, the underlying complaint stated that the party bringing suit had made premium payments, but did not actually receive any insurance coverage in return. *Id.* Defendant Evanston argued that it did not have a duty to defend the underlying complaint because of Exclusion F. *Id.* The plaintiff in that case argued that Exclusion F did not apply to claims "for negligence where the measure of damages happens to be the amount of premiums paid." *Id.* The Ninth Circuit rejected this argument. The court held that the exclusion applies to "*any* claim for premiums, regardless of how characterized." *Id.* at 280 (emphasis in original).

In this case, Plaintiff argues that the exclusion does not apply because the payments were simply fraudulently induced payments, not premiums. (Pl.'s Resp. 8.) If the underlying complaint asserts a claim for lost premiums, Exclusion F applies, regardless of how the underlying claim is characterized.

The underlying complaint alleges that Vehicle Leasing paid regular insurance premiums for what turned out to be a fraudulent insurance policy. (Vehicle Leasing Compl. 3.) These premium payments amounted to over $1 million. (*Id.*) Vehicle Leasing states that Wesco is in

breach of the contract, and Vehicle Leasing seeks damages in excess of $1 million.  (*Id*. at 4.)  In its third-party petition, Wesco states that Vehicle Leasing paid exactly $1,078,275 in premiums for an insurance policy it never received.  (Wesco Original Pet. 7.)   Wesco asserted that Plaintiff agreed to pay Vehicle Leasing $1,078,275—the exact amount that Vehicle Leasing paid for the premiums.  (*Id*.)  Wesco states that the Vehicle Leasing lawsuit is seeking as damages the exact amount that Vehicle Leasing paid in premiums (and that Plaintiff already agreed to pay to Vehicle Leasing).  (*Id*. at 8.)  Examining both the Vehicle Leasing complaint and Wesco's third-party petition, we are compelled to conclude that the claim against Plaintiff involves a claim to recover premiums.  Since the underlying lawsuit seeks damages in the form of lost premium payments, we conclude that Exclusion F applies and Defendants do not have a duty to defend Plaintiff.

Plaintiff also argues that Defendants are required to defend Plaintiff because Defendants previously defended Plaintiff in another case under very similar circumstances.  In that case, Fusion Auto Finance, L.L.C. ("Fusion") bought a Residual Value Insurance policy from Plaintiff, paid premiums for the policy, and never received coverage.  (Fusion Compl. 5-6, Pl.'s Resp. Ex. 3.)   Plaintiff argues that the Fusion lawsuit involved the same claims as the present underlying lawsuit; namely, Fusion alleged that Plaintiff sold it a fraudulent insurance policy.  (Pl.'s Resp. 10.)  Defendants highlight a key distinction between the Fusion and Vehicle Leasing claims.  Defendant argues that in the Fusion lawsuit, the complaint alleged an additional element of damages, which was not alleged in Vehicle Leasing.  (Defs.' Mot. 4.)  Defendants point out that the Fusion complaint also alleged damages resulting from the cost of having to go out and acquire a new insurance policy.  (*Id*.)  The underlying complaint in the Fusion lawsuit states that "Fusion's economic damages include, but are not limited to, credit worthiness damage and repair

. . . ." as well as "lost income."  (Fusion Compl. 14, 33.)  We agree that there is a distinct difference between the Fusion lawsuit and the Vehicle Leasing lawsuit.  We therefore reject Plaintiff's assertion that Defendants "unquestionably created precedent by acknowledging the duty to defend" in the Fusion lawsuit.  (Pl.'s Resp. 11.)

Accordingly, we find that Exclusion F applies to the underlying dispute, and that Defendants do not have a duty to defend or provide coverage to Plaintiff.[3]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be treated as a Motion for Judgment on the Pleadings and will be granted.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**

---

[3] Since we find that Exclusion F applies, the insurance policy does not apply to the Vehicle Leasing lawsuit.  (Insurance Policy 9.)  Therefore, because the policy does not apply, Defendants do not have a duty to provide coverage to Plaintiff.